IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **MATTHEW PROUDFOOT**, <br><br> Defendant. | Case No. 3:15-cr-427-SI-02 <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

      Matthew Proudfoot pleaded guilty to conspiracy to commit wire fraud and money laundering in violation of federal law. Along with his father and co-defendant Harry Proudfoot, Matthew Proudfoot solicited 140 individuals across the United States to invest more than three million dollars into their fraud. Matthew Proudfoot currently is 51 years old and suffers from serious medical issues, specifically postherpetic neuralgia and pleurisy. Postherpetic neuralgia is a shingles-related ailment that, for Mr. Proudfoot, causes extreme pain in his chest every time he breathes deeply due to the shingles virus getting into the nerve endings in and around his lungs. Coughing alone is extremely painful, and exposure to any condition (such as COVID-19) that exhibits through chronic respiratory issues such as a cough is extremely dangerous for Mr. Proudfoot. His condition also has led to a pleurisy diagnosis, which is an inflammation of

PAGE 1 – OPINION AND ORDER

the tissues that line the lungs and chest cavity, causing sharp pains in the chest, coughing, and sometimes fever. Mr. Proudfoot has been hospitalized several times for pleurisy; there is no cure, only pain management until the inflammation subsides.

On July 18, 2019, the Court sentenced Matthew Proudfoot to a term of imprisonment of 24 months followed by three years of supervised release. The Court also ordered Mr. Proudfoot (and his father) to pay restitution in the total amount of $3,170,041. The Court allowed Mr. Proudfoot to self-surrender to a correctional institution designated by the Bureau of Prisons ("BOP"). On several occasions, the Court granted Mr. Proudfoot's request to postpone his date of self-surrender. Mr. Proudfoot currently is required to self-surrender on September 1, 2020. *See* ECF 232. The BOP has designated Mr. Proudfoot to begin serving his sentence at Butner FCI Medium I SCP, which is the minimum-security satellite camp adjacent to Federal Correctional Institution ("FCC") Butner Medium I, which is near the Federal Medical Center ("FMC") in Butner, North Carolina.

On June 1, 2020, Mr. Proudfoot, through counsel, submitted a request to the Executive Assistants at both FMC Butner and FCI Butner Medium I, asking the warden to exercise his discretion under either: (1) 18 U.S.C. § 3624 to allow Mr. Proudfoot to serve his time in home confinement; or (2) 18 U.S.C. § 3582(c)(1)(A) to request that the Court reduce Mr. Proudfoot's sentence. The BOP informed Mr. Proudfoot that it could not consider home confinement as an option for an inmate's *initial* designation and that Mr. Proudfoot would need to wait until he formally entered into custody of the BOP before making that request. Mr. Proudfoot has no ability to administratively appeal this determination.

On June 17, 2020, Mr. Proudfoot filed with the Court, Defendant's Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c). ECF 234. Mr. Proudfoot asks the Court to reduce his

PAGE 2 – OPINION AND ORDER

sentence to time served and impose a condition of supervised release that requires Mr. Proudfoot to spend the remainder of his imposed term of imprisonment on home confinement. The Government opposes Mr. Proudfoot's motion but does not oppose the Court further extending Mr. Proudfoot's self-surrender date based on his concerns over COVID-19. For the reasons that follow, the Court DENIES Mr. Proudfoot's motion for compassionate release but will further extend until September 1, 2021 Mr. Proudfoot's date for self-surrender.

## LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

### A.  Modifying a Term of Imprisonment for Compassionate Release

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the Bureau of Prisons ("BOP"). The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP

denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id*.

**B. Extraordinary and Compelling Reasons**

The Sentencing Commission policy statement for reducing a term of imprisonment under § 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons." USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and compelling reasons are: (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of

---

[1] On June 2, 2020, the United States Court of Appeals for the Sixth Circuit held that a defendant's failure to satisfy this administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction; instead, this is a mandatory claim-processing rule that binds a court when properly asserted by the Government and not forfeited. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). The Ninth Circuit has not yet addressed this issue.

the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are currently in a global health crisis caused by the 2019 novel Coronavirus ("COVID-19"), which already has taken the lives of more than 140,000 people just in the United States during the past several months. When a defendant has a chronic medical condition that may substantially elevate the defendant's risk of becoming seriously ill or dying from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13, as currently written, does not constrain the Court's ability to find extraordinary and compelling reasons. Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal.

PAGE 5 – OPINION AND ORDER

Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

**C. Safety of Other Persons and the Community**

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any

other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

**D.  Sentencing Factors Under § 3553(a)**

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . ., after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" USSG § 1B1.13 cmt. 4.

# DISCUSSION

## A. Eligibility of Mr. Proudfoot for Compassionate Release

The Government argues that because Mr. Proudfoot has not begun serving his sentence, his request for compassionate release is premature. According to the Government, by requiring that a defendant approach the warden at his institution to seek compassionate release, the statute, by its plain text, contemplates that a defendant who seeks compassionate release must already be in the custody of the BOP. In support of this conclusion, the Government cites *United States v. Konny*, 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020) (holding that based on the "plain terms" of statute, only defendants who have begun serving their term of imprisonment at a BOP facility are eligible for compassionate release).

In reply, Mr. Proudfoot cites a later decision from that same district that decided *Konny*. In the later case, the district court reached the opposite conclusion, explaining:

> Notably absent from this statute is any express requirement that a defendant be in the custody of the Bureau of Prisons ("BOP") at the time he petitions for compassionate release. Indeed, the relief available under the statute—a reduction in sentence, and not, specifically, release from custody—implies that the only absolute requirement is that a defendant be subject to a federal sentence. *See* 18 U.S.C. § 3582(c) (providing that "[t]he court may not modify a term of imprisonment once it has been imposed except" in specified situations).

*United States v. Austin*, 2020 WL 3447521 at *2 (S.D.N.Y. June 22, 2020); *cf. United States v. Nazer*, 2020 WL 2197840 at *2 (N.D. Ill. May 6, 2020) (stating that language of statute "does not categorically foreclose relief" for defendant who "has not yet begun to serve his term of imprisonment"). According to Mr. Proudfoot, the statute addresses reducing a sentence, not specifically releasing a defendant from BOP custody.

For purposes of the pending motion, the Court need not resolve this issue. Instead, the Court will assume that Mr. Proudfoot's position is correct and that he properly may present the merits of his argument to the Court at this time.

## B.  Merits of Mr. Proudfoot's Motion for Compassionate Release

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). As other district courts have noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (brackets in original) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). The Court also must consider the sentencing factors under § 3553(a), to the extent they are applicable. *See* § 3582(c)(1)(A) and USSG § 1B1.13.

There is no dispute that we are in a global health crisis and pandemic. The CDC warns that people of any age with "damaged or scarred lung tissues" might be at an increased risk for severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-at-higher-risk.html (lasted visited July 25, 2020). The Court will assume that Mr. Proudfoot's chronic medical condition places him at an increased risk from COVID-19.

The Government argues that Mr. Proudfoot engaged in an extensive fraud that, despite his health issues, warrant a sentence of imprisonment. The Government adds that Mr. Proudfoot's fraud caused great harm to his victims, many of whom strongly oppose any grant of compassionate release, as reflected in the 12 victim impact statements the Government recently provided to the Court and Mr. Proudfoot's counsel. According to the Government, excusing Mr. Proudfoot from the sentence the Court imposed means that he will not be held accountable for his crimes with a term of imprisonment and this creates a risk for the future. *See, e.g.*, United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm.").

The Court has considered all the relevant factors for compassionate release and agrees with the Government on the merits. Mr. Proudfoot has not made a sufficient showing of special circumstances to meet the high bar set by Congress and the Sentencing Commission for compassionate release. Mr. Proudfoot, however, has satisfied the Court that the interests of justice will best be served by further postponing Mr. Proudfoot's date of self-surrender during the pendency of the COVID-19 pandemic. Accordingly, the Court extends the date of Mr. Proudfoot's self-surrender for an additional twelve months, to September 1, 2021.

## CONCLUSION

The Court **DENIES** Defendant's Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c) (ECF 234). **IT IS, HOWEVER, ORDERED** that (1) the Amended Judgment filed September 24, 2019 in this matter (ECF 223) is hereby amended to protect the health of Mr. Proudfoot against the risk of COVID-19 based on his chronic conditions of postherpetic neuralgia and pleurisy; (2) that the date of September 1, 2020 for Mr. Proudfoot to self-surrender

(*see* ECF 232) is hereby postponed due to the COVID-19 global pandemic; (3) Mr. Proudfoot shall surrender for service of his sentence at the facility designated by the Bureau of Prisons before 2:00 pm on September 1, 2021; and (4) all other conditions in the Amended Judgment remain in full force and effect.

**IT IS SO ORDERED.**

DATED this 27th day of July, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge